**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**LATORRIS CHAMPION** **PLAINTIFF**

**V.** **CAUSE NUMBER: 3:25-cv-00193-JDM-JMV**

**AMERICAN WHOLESALE GROCERS, INC.** **DEFENDANT**

**ORDER AND MEMORANDUM OPINION**

Before the Court is Defendant American Wholesale Grocers, Inc.'s Motion for Summary Judgment. [32] Plaintiff Latorris Champion, a black male, has sued his former employer AWG for a host of discrimination and retaliation claims.[1] The claims stem from four events—a written warning, two failures to promote, and Champion's firing. He claims these events happened because of his age, race, reporting a co-employee for using a racial slur, and complaining of race discrimination. AWG disagrees and insists Champion cannot create triable fact issues on any claims. So it seeks summary judgment.

The Court agrees with AWG on all but one claim based on one event. Procedural bars or lack-of-evidence prove fatal to most of Champion's claims. The lone outlier is Champion's Title VII discrimination claim based on his being fired while his white counterpart was not.

For this disparate-treatment-based claim, the Fifth Circuit requires a less stringent *motivating factor* causation standard. And viewing the evidence in the light most favorable to Champion, the Court finds he created a triable fact issue as to whether race was a motivating factor when AWG fired him for cursing at employees but did not terminate a similarly situated white employee—an employee who after formally being warned about using the "n-word" at work, *later*

---

[1] Champion sues AWG for claims under the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981.

called a black employee a "stupid n-gger." So a fact issue exists on Champion's termination-based Title VII discrimination claim.

Thus, the Court grants AWG's Motion for Summary Judgment [32] in part. Champion's ADEA claim, two § 1981 claims, and Title VII retaliation claim are dismissed with prejudice.

But the Court denies AWG's Motion for Summary Judgment [32] on the Title VII discrimination claim based on Champion's termination.

## Facts

AWG hired Champion in February 2021 as an Outbound Supervisor in its Southaven, Mississippi warehouse. Shawn Marsh and Jared Hendricks, both white males, were the other Outbound Supervisors.

### I. Marsh's Use of Racial Slurs

In February 2022, a third-party contractor working at the warehouse said the "n-word" around AWG employees. In response, Marsh addressed a group of AWG employees, advising them it was unacceptable to use the word "n-gger" at work. Champion was not there. But when other employees told him about the way Marsh relayed the message, he reported Marsh to AWG. In response, AWG issued Marsh a "Final Written Warning." It warned Marsh that additional inappropriate conduct could result in further discipline or termination.

Champion testified that roughly four months later, in June 2022, he personally heard Marsh repeat the "n-word." This time Marsh supposedly called a worker loading a truck a "stupid n-gger." And Champion reported Marsh's post-warning comments to AWG. Yet the company continued to employ Marsh.

**II. October 4, 2022 Corrective Counseling**

On October 4, 2022, a white male Outbound Manager issued Champion a "Corrective Counseling" for attendance issues not resolved after a warning. The company warned him that failure to improve his attendance would yield "stronger discipline." After this, Champion expressed to the Warehouse Manager that he felt he was being discriminated against. Specifically, Champion mistakenly believed that AWG had not taken corrective action against Hendricks for similar attendance issues, when it had.

**III. AWG's Failure to Promote Champion**

Around the same time, one of two Outbound Managers in Southaven began training Champion. She told Champion he would perform her duties in her absence. She also told Champion he would replace her when she relocated.

After both Outbound Managers left Southaven, AWG evaluated Champion and other supervisors as replacements. But Champion's performance and attendance issues kept him from being selected. AWG ultimately decided not to fill either vacancy because it was consolidating its Southaven and Hernando warehouses. Marsh and Hendricks did perform some of the Outbound Managers' duties after their departures. But AWG did not promote Marsh or Hendricks to managerial positions.

**IV. Champion's Termination**

In late February 2023, three employees submitted written statements about Champion to AWG. All three claimed Champion had cursed at, threatened, and disrespected them—violations of AWG policy. While AWG's Executive Director of Human Resources and Warehouse Manager's testimony also confirmed this, Champion denies it occurred. Instead, he maintained he spoke sternly to the employees but did not use profanity or threats. He also offered a fellow employee's

testimony. The employee testified Champion had never used profanity or behaved unprofessionally around him at work. Champion also complains AWG should have used camera footage of the exchange, which he requested during the investigation. Additionally, he argues AWG broke protocol by not interviewing him by phone before terminating him.

### V. Champion's Lawsuit

Champion filed a charge with the Equal Employment Opportunity Commission on August 4, 2023. He alleged discriminatory and retaliatory discharge. On March 11, 2025, the EEOC issued a Determination that AWG had not applied its disciplinary policies equally toward Champion. But efforts to conciliate the charge were unsuccessful. So the EEOC gave Champion a "Notice of Right to Sue."

Champion sued AWG in this Court for violations of the ADEA, Title VII, and § 1981. He has since conceded he was not terminated based on his age. Moreover, he failed to exhaust his ADEA-required administrative remedies. 29 U.S.C. § 626(d)(1)(A). So what he eventually ended up bringing were Title VII and § 1981 claims. And he sued for discrimination and retaliation under each statute.

AWG has filed for summary judgment. It alleges Champion cannot create triable fact issues on any of them.

## Summary Judgment Standard

"Summary judgment is warranted when the evidence shows no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law." *Ghanem v. Morrow*, No. 1:24-cv-182-SA-RP, 2025 WL 3470052, at *2 (N.D. Miss. Dec. 3, 2025) (citing FED. R. CIV. P. 56(a)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, No. 1:17-cv-164-DAS, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). The Court may grant summary judgment "if the record *conclusively* establishes that the necessary legal elements are (or are not) met . . . ." *Cory v. Stewart*, 103 F.4th 1067, 1079 (5th Cir. 2024).

**Discussion**

After review, AWG is entitled to summary judgment on all but one claim based on one event.

Champion brings four claims[2]—race discrimination in violation of Title VII, race discrimination in violation of § 1981, retaliation under Title VII, and retaliation under § 1981. But in his complaint, he generally based each of the four claims "on the facts identified above." Pleading in this manner complicates the Court's analysis.

This is because the "facts above" section does not specify which facts support each claim. On summary judgment, AWG has taken an all-inclusive approach and presumed four different adverse employment decisions—the warning about being late, the failure to promote him instead of Hendricks, the failure to promote him instead of Marsh, and his being terminated. And under federal employment law, "[e]ach incident of discrimination and each retaliatory adverse

---

[2] Champion abandoned his ADEA claim for failing to exhaust his administrative remedies.

employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Proceeding this way, each claim potentially is based on four separate actionable discriminatory or retaliatory events.

More than that, the legal standards and elements may differ depending on the statute invoked (Title VII versus § 1981), the allegation (discrimination versus retaliation), and the type of employment decision (corrective counseling, failure to promote, or termination). Some claims require exhaustion of administrative remedies, some do not. Some claims use a "but for" causation standard, some don't. Some have four elements in their *prima facie* cases, some have three.

For this reason, the Court will analyze all four claims as they relate to each of the four alleged employment events. This is a tedious task that does not lend itself to a straightforward discussion.

**I. Procedurally Barred Claims**

When each alleged discriminatory or retaliatory event is taken into consideration, Champion's Title VII claims become much narrower. This is because Champion failed to exhaust his administrative remedies for three of the four alleged adverse events.

While § 1981 does not require the exhaustion of administrative remedies to sue in court, Title VII does. Specifically, federal law required Champion to have filed charges with the EEOC within 180 days of the alleged misconduct. 42 U.S.C. § 2000e-5(e)(1). Again, each instance of supposed misconduct constitutes a separate, actionable unlawful employment practice. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114. So the 180-day deadline separately applies to each adverse event. *Id.*

Champion received the corrective counseling on October 4, 2022. And AWG allegedly passed him up for promotion in December 2022 and January 2023. But he did not file charges

with the EEOC until August 4, 2023—more than 180 days after each event. Champion concedes those claims are procedurally barred.

But Champion's Title VII claims based on his *termination* are timely and not procedurally barred. Neither are his § 1981 claims barred because that statute does not require exhaustion of administrative remedies. So Champion's non-procedurally barred claims are his Title VII claims relating to his termination and his § 1981 claims related to all four events.

## II. *McDonnell Douglas* Framework

Champion does not support any of his non-procedurally barred claims with *direct* evidence of AWG's discrimination or retaliation. Because he instead relies on circumstantial evidence, the *McDonnell Douglas*[3] burden-shifting framework applies. *Brenyah v. Columbia Hosp. Corp. of Bay Area*, 181 F.4th 609, 620 (5th Cir. 2026). There are three steps to this analysis. "[Champion] has the initial burden of establishing a prima facie case of discrimination [or retaliation]. If [he] does so, the burden then shifts to [AWG] 'to articulate some legitimate, nondiscriminatory reason' for its action. If [AWG] can provide a reason, then the burden shifts back to [Champion] to prove that the reason is pretextual." *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) (quoting *McDonnell Douglas*, 411 U.S. at 802).

## III. Title VII Termination Claims

### *A. Champion's Surviving Title VII Discrimination Claim Based on Termination*

Applying this framework, the first non-procedurally barred claim the Court will analyze is Champion's Title VII discrimination claim based on his termination. For this claim to proceed, Champion must only offer sufficient evidence to show his race was a *motivating factor* for his

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

termination. *Stelly v. Dep't of Pub. Safety & Corrs., La. State*, 149 F.4th 516, 525-26 (5th Cir. 2025).

### 1. Champion Can Establish a Prima Facie Case of Title VII Discrimination

A *prima facie* discrimination case requires Champion to show (1) he is a member of a protected group, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) a similarly situated employee outside his protected group was treated more favorably. *Brenyah*, 181 F.4th at 620.

AWG agrees Champion, who is black, was a member of a protected group. It also agrees he was qualified for his job and suffered an adverse employment action—he was fired. But the company disagrees about the fourth element—that it treated a similarly situated employee outside Champion's protected group more favorably.

Instead, AWG says it terminated Champion from his Outbound Supervisor position because he violated company policy when he cursed at and spoke disrespectfully toward employees. Still, Champion argues he was treated disparately from Marsh—a white male Outbound Supervisor—whom he reported in June 2022 to AWG after supposedly hearing Marsh call a black employee a "stupid n-gger." Both parties admit AWG had warned Marsh months earlier not to use the word. But Champion was fired for his remarks, while Marsh was not.

Having established a *prima facie* Title VII discrimination case, the burden now shifts to AWG to articulate a legitimate, nondiscriminatory reason for terminating Champion.

### 2. AWG Provides Legitimate, Non-Discriminatory Reason for Termination

AWG argues it legitimately fired Champion for violating company policy by cursing at, threatening, and talking disrespectfully to employees. *See Holloway v. Procter & Gamble Mfg.*

*Co.*, 185 F.4th 545, 550 (5th Cir. 2026). And it provides three written employee statements and two affidavits as evidence. So AWG has offered a legitimate, non-discriminatory reason for firing Champion. The burden shifts back to Champion to show that AWG's offered reason was pretextual.

**3. Champion Can Create a Triable Fact Issue on Pretext**

For pretext in a Title VII discrimination claim, Champion need only show that his race was a *motivating factor* in his firing. *Stelly*, 149 F.4th at 525–26. "[Champion] may show 'pretext . . . through evidence of disparate treatment . . . .'" *Benjamin v. Felder Servs., LLC*, 753 F. App'x 298, 302 (5th Cir. 2018) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). More specifically, Champion must produce "substantial evidence" of disparate treatment. *Brenyah*, 181 F.4th at 621. Substantial evidence is "of such quality and weight that reasonable and fair-minded [people] in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Laxton*, 333 F.3d at 579).

In a disparate treatment case, the Fifth Circuit also requires evidence of a similarly situated employee. *Brenyah*, 181 F.4th at 621 (citing *Owens*, 33 F.4th at 827). And a variety of factors are considered when determining whether another employee is similarly situated. *Lavigne v. Cajun Deep Founds., LLC*, 654 F. App'x 640, 646 (5th Cir. 2016) (per curiam). These include job responsibility, experience, and qualifications. *Id.* And the employment actions must be taken "under nearly identical circumstances." *Brenyah*, 181 F.4th at 621 (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).

Here, Champion points to a similarly situated—but white—employee. Like Champion, Marsh also served as an Outbound Supervisor. And he had worked at AWG for at least as long as Champion. AWG does not suggest Marsh is not similarly situated to Champion.

This leads to the Court's "identical circumstances" analysis. Employees reported Champion for using disrespectful language—and he was terminated after an investigation. Yet in February 2022, Marsh used the "n-word" when advising AWG employees that such language was off limits at work. And he was only warned.

Standing alone, the way Marsh relayed the message to employees *did not* create an identical situation to Champion's. But when coupled with Champion's unrebutted deposition testimony about Marsh's later, post-warning episode, the Court finds there is a triable fact issue about whether race was a motivating factor.

Champion says in June 2022 he reported Marsh for calling a worker a "stupid n-gger"—in direct defiance of an earlier warning. AWG denied this when answering this lawsuit. But curiously, when seeking summary judgment, it *did not* offer rebuttal evidence—much less even address Champion's assertion. Neither does AWG's summary judgment motion, memorandum, or reply challenge or address Champion's sworn testimony that he notified management in June 2022 about Marsh's post-warning conduct. Further, AWG submitted no evidence that it investigated Champion's reports.

Based on Champion's assertions and AWG's silence, there is a sufficient triable fact issue about whether disparate treatment by race factored into his termination. Thus, AWG is not entitled to summary judgment on Champion's *Title VII discrimination* claim based on his *termination*.

### ***B. Title VII Retaliation Claim Based on Termination***

By contrast, Champion's Title VII *retaliation* claim does not survive. The Court does not address the first two steps of the *McDonnell Douglas* analysis—a *prima facie* case and a legitimate, non-retaliatory reason from AWG. That's because these claims fail on the third step—pretext. Unlike Title VII discrimination claims, Title VII retaliation claims require that Champion offer

sufficient evidence to show his race was the *"but for" cause* of his termination.[4] *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). The Fifth Circuit has held this "but for" standard applies at the pretext step of the *McDonnell Douglas* analysis, not the *prima facie* case step. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022); *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). And Champion cannot establish that, "but for" his reporting Marsh or complaining of race discrimination, he would not have been fired.

The Court finds *Brenyah* compelling. In that case, a nurse sued a hospital for Title VII and § 1981 retaliation. *Id.* at 618. The nurse reported incidents of racism and harassment to her supervisors. *Id.* at 617. She alleged that instead of stopping the behavior, the supervisors took disciplinary actions against her because of poor time management and patient issues. *Id.* Eventually, the nurse stopped working at the hospital because of "forced resignation." *Id.* at 618. The Fifth Circuit held she did not meet her summary-judgment burden. *Id.* She offered no evidence creating a genuine dispute of material fact that but for her complaints to supervisors, she would not have suffered adverse employment actions. *Id.*

In this case, Champion reported both of Marsh's alleged uses of the "n-word" to two different supervisors. He also complained of race discrimination to one of them after he received the corrective counseling. And those two supervisors were part of the group that eventually fired Champion. But AWG alleges it terminated Champion because he behaved unprofessionally toward employees. And it corroborates this with three handwritten employee complaints as evidence. So, like the nurse in *Brenyah*, Champion has not shown a genuine dispute of material

---

[4] "[A] plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). But this is not the standard for a Title VII discrimination claim. *Id.*

fact that, but for his reporting Marsh or complaining of discrimination, he would not have been fired. *See id.* at 617-18. Because Champion has not established retaliation under Title VII, the Court grants AWG summary judgment on that claim.

**IV. Section 1981 Claims**

The Court next considers Champion's § 1981 claims. Section 1981 requires a "but for" causation standard for all claims. *Comcast*, 589 U.S. at 341. So his § 1981 claims—to the extent they are based on his termination—fail for the same reason as his termination-based Title VII retaliation claim.

This leaves Champion's §1981 claims based on the corrective counseling and failures to promote as the only claims that have yet to be considered. The Court notes that "[t]he analysis of discrimination [and retaliation] claims under § 1981 is identical to the analysis of Title VII claims." *Brenyah*, 181 F.4th at 619-20 (quoting *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)); *see Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Applying the same *McDonald Douglas* framework, Champion's remaining § 1981 discrimination and retaliation claims fail on the first step—no *prima facie* case.

***A. No Prima Facie Case of Discrimination for Corrective Counseling***

First, Champion cannot make a *prima facie* discrimination case by pointing to AWG's corrective counseling. Again, a *prima facie* discrimination case requires Champion show (1) he is a member of a protected group, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) a similarly situated employee outside his protected group was treated more favorably. *Brenyah*, 181 F.4th at 620.

The Court focuses only on the adverse employment action element. AWG suggests the corrective counseling was not an adverse employment action. The Court agrees. "'Adverse

employment actions' include adverse decisions in 'hiring, firing, compensation, or in the terms, conditions, or privileges' of employment." *Brenyah*, 181 F.4th at 620 (quoting *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 502 (5th Cir. 2023)). "The phrase 'terms, conditions, or privileges' of employment is broad and 'covers more than the economic or tangible.'" *Id.* (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024)). "But [Champion] must show some harm respecting an identifiable term or condition of employment." *Id.* (internal quotations omitted).

Although no courts in the Fifth Circuit have addressed whether written warnings constitute adverse employment actions, other courts have. *Skipper v. Food Giant, Inc.*, 187 F. Supp. 2d 490, 493-94 (D. Md. 2002) (holding that written warnings are not adverse employment actions); *Onofre Polanco v. 43rd St. P'ship, Inc.*, 724 F. Supp. 2d 420, 425 (S.D.N.Y. 2010) ("The Court is not persuaded that . . . a written warning with no discernible employment consequences . . . amounts to a material adverse employment action."); *Covello v. City of Chi.*, 448 F. Supp. 2d 987, 993 (N.D. Ill. 2006) ("[W]ritten warnings by themselves do not result in tangible job consequences, and therefore are not adverse employment actions . . . .").

Champion's corrective counseling itself had no adverse effect on his employment. AWG designated it as a "Written Warning"—a warning that failure to improve his attendance would lead to "stronger discipline." When Champion was not promoted, AWG examined Champion's attendance and performance history *as a whole*. And AWG insists it fired Champion for his behavior toward other employees, not his attendance and performance history. So Champion provides no evidence that the corrective counseling itself adversely affected his employment. Thus, he cannot establish a *prima facie* case of corrective counseling-based discrimination.

### *B. No Prima Facie Case of Discrimination for Failures to Promote*

Nor can Champion establish a *prima facie* case of discrimination relating to AWG's failures to promote him. The Fifth Circuit has a different *prima facie* test for discrimination claims based on a failure-to-promote theory. "To establish a *prima facie* case of discrimination based on a failure-to-promote [], [Champion] must show that (1) he is a member of a protected class; (2) he sought and was qualified for a position for which applicants were being sought; (3) he was rejected for the position; and (4) the employer either (a) hired a person outside of [Champion]'s protected class, or (b) continued to seek applicants with [Champion]'s qualifications." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 406 (5th Cir. 2021) (citing *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015)). And Champion has not established the fourth *prima facie* element—that AWG either hired someone else or sought applicants.

AWG contends it rejected Champion because it determined he "would not be a good fit for the manager position." But AWG did not hire a person outside Champion's protected class or seek other applicants. In fact, it did not hire anybody *at all*. That's because it merged the warehouse with the Hernando location. Further, AWG did not promote Marsh—which Champion concedes. Marsh instead performed some of one of the Outbound Manager's duties after she left. And Hendricks merely assumed some managerial duties in the other Outbound Manager's absence.

Because Champion cannot establishment a *prima facie* case of discrimination from AWG's failures to promote him, this claim also fails.

### *C. No Prima Facie Cases of Retaliation for Corrective Counseling or Failures to Promote*

Finally, Champion cannot establish *prima facie* cases of retaliation from AWG's corrective counseling or failures to promote. The *prima facie* case requirements for retaliation differ from the discrimination case. Champion must show (1) he engaged in a protected activity, (2) he was

subject to an adverse employment action, and (3) a causal link existed between the protected activity and the adverse action. *Owens*, 33 F.4th at 834-35. While a different test applies to his retaliation claim based on the corrective counseling, Champion faces the same problem he did with his discrimination claim—the corrective counseling was not an adverse employment action.

Another nuance is that the adverse employment action standard for retaliation claims is less demanding than for discrimination claims. *Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019). "To be actionable when it is a product of retaliation, an employment decision need only 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Even so, Champion has not met that standard here.

What the corrective counseling did was warn Champion that failure to improve his attendance would yield "stronger discipline." But apart from the warning, it changed nothing about Champion's employment status. A reasonable worker would not refrain from making or supporting a charge of racial discrimination simply because his employer warned him not to be late again. So Champion has not established a *prima facie* case of corrective-counseling-based retaliation.

Turning to Champion's retaliation claims for the failures to promote, the snag is the causal link between his protected activities and AWG's not promoting him. AWG maintains it did not promote Champion because it did not promote *anybody*. And with the causal connection requirement, this is a major hurdle in Champion's effort to establish a *prima facie* case of retaliation. *See Brenyah*, 181 F.4th at 623.

Suspecting he does not have a *prima facie* retaliation claim, Champion now shifts course. On summary judgment, he argues he brings this claim because he lost management opportunities.

But Champion only pushed a general failure-to-promote claim in his complaint. And "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). So Champion has also failed to establish *prima facie* cases of retaliation based on the failures to promote.

**Conclusion**

For these reasons, Associated Wholesale Grocers, Inc.'s Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Judgment will be entered in Associated Wholesale Grocers, Inc.'s favor on the following claims:

a) Champion's ADEA discrimination claims for the corrective counseling, failures to promote, and his termination;

b) Champion's § 1981 discrimination and retaliation claims for the corrective counseling, failures to promote, and his termination;

c) Champion's Title VII retaliation claims for the corrective counseling, failures to promote, and his termination;

d) And Champion's Title VII discrimination claims for the corrective counseling and failures to promote.

Champion's Title VII discrimination claim for his termination survives summary judgment.

**SO ORDERED**, this 29th day of September, 2026.

/s/ James D. Maxwell, II
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI